24-1180, Albert Craig v. City of New York, et al. Thank you very much. Good morning. Why don't we just wait for everybody to go outside and close the doors so that way we don't have any bustling in the back that prevents us from hearing everything that's going on. Mr. Craig, I understand you would like to reserve a minute for rebuttal. Yes. So, I'm sure you've seen everything before. You have your clock that's right in front of you. It'll wind down. We'll start it out at, oh, it's already set for five minutes. And after you're done, we'll hear from the other side, who I understand are dividing it evenly three minutes aside. But then if there's anything you hear that you would like to respond to, we're going to give you one minute for rebuttal. So, you'll argue at the beginning, and then you will be the last one to argue today. Okay? Yes. So, whenever you're ready, sir. Okay, thank you. First, I want to thank you for hearing me out. This has been, since 2019, I've been battling this situation with these individuals. First, I would like to bring the court's attention that Mr. Charney is not here. Mr. Charney has sent Mr. Cronin, I believe his name is. Mr. Cronin is a representative of Charney-Wheeler. The conflict is, I hired Charney-Wheeler along with the defendant, Mr. Husam-Medina, as part of the union, which would eliminate them about basically the same issues. The court held Mr., referred contempt charges to the magistrate judge against Mr. Charney, and that directly hurt my case. Mr. Charney paid, and his defendant paid $35,000 to my attorney, Fred Lichmacher, to effectively tank my case. The documents show that during a boardroom meeting, the treasurer, when asked what was the outside legal for, he said it was for a conflict attorney for me that I had requested. The thing is, they had already paid him in August. August, a month before. They had just approved that I had a conflict attorney two days prior, right? The judge, the district judge, found it credible. Once he heard that I was making this allegation, she found it credible. She referred contempt charges against Mr. Charney, because Mr. Charney, who was on the email talking about the retainer agreement, the retainer agreement disappeared, right? Mr. Charney, on January 24th, 2019, entered into a room. He was hired by us, and he gave us false information. He told us the deal was drafted, but not yet. He negotiated a deal to retrieve funds. The deal was drafted, but not yet signed. That was false. Defendant Hussamadeen, Mr. Charney, Mark Steyer, and the treasurer all knew that that was false. They came in and circulated a restitution agreement around for us to sign for 6 million. Angel Castro, the board member next to me, told, whispered in my ear, because I had told him to look out for this. Four people had signed, right? They all knew that the agreement was signed on the 17th, and money was deposited on the 14th. Mr. Charney himself, in court records, said I had, when he was caught, he said I had nothing to do with that agreement. He switched it up and said I had nothing to do. The court made an error by allowing Mr. Charney to, he was in the complaint. They approved the complaint with him in it. That violated the law, the 3.7 rule. In Agati versus the U.S., they ruled that you can't be an advocate witness. He became that. He also was aware that the facts that he told the court was false. He admitted that it was false when he said he had nothing to do with the deal after initially saying that. He also made these other false statements. Pardon me, I'm a little nervous. He also submitted to you, I mean the Court of Appeals, false statement that he was never my attorney so that he could continue. Isn't it odd that he's not here because he would have to answer to these questions? Mr. Charney has submitted so many false documents to this court. And the city, they removed me from my elected position effectively because Mr. Husamadeen requested that they remove me so he could continue to steal the money with Mr. Charney. What happened was, according to the May Executive Order 75, it states that as long as I have the position, I have the release time. I'm an elected official. And also, a New York State collective bargaining law states that the city cannot interfere in internal union policies. They did. Their argument was that it was Husamadeen and not them that removed me from my union time. That was false. He does not have control. The Constitution of our laws of COBA does not give him that right. It gives the power to the whole executive board. Mr. Husamadeen was allowed to do it because they granted him that authority. Okay. So, Mr. Craig, as I said, you are going to reserve a minute for rebuttal. I'm going to hear from you again, so don't go away. Why don't we hear from Attorney Paulson? You've got three minutes. Thank you very much, Your Honors. Susan Paulson on behalf of the Municipal Appellees. Your Honors, for the reasons set forth in our brief, the district court properly concluded that the Second Amendment complaint failed to plausibly allege the denial of plaintiffs' constitutional rights by the municipal dependents. There's no reason to argument with citation to authority presented in this brief. The only contention he appears to make is that he made today, which is that the city has misrepresented that the union controls his release time. And in response to that point, I would just redirect this court's attention to the complaint, paragraphs 113, 122, 159, and 162, in which he alleges that it was the COBA president that controlled his release time. I'm happy to answer any questions the court might have and otherwise would rest on my brief and request of comments. That's fine. Why don't we hear from Attorney Cronin. Good morning. May it please the court?  H. Joseph Cronin, I guess, as you know, with Charney and Wheeler. Always good to remind us. Essentially, I'll kind of take the same tack that my colleague did and say that unless the panel has any specific questions, we'll rest on our brief. I have one question. In this case, we have a mix in the district court of self-represented filings and counsel filings. I think the district court determined that it should not apply the usual pro se solicitude because the bulk of the Second Amendment complaint had, in fact, been drafted by counsel. Is that your position as well, that we should not give this sort of pro se treatment when we're reviewing the complaint? Yes, 100 percent. And I would also note that Judge Darcy Hall had noted that when plaintiffs have had multiple opportunities to amend complaints, and it becomes clear that no amendments could make a claim that would survive a 1236 motion. And the Second Amendment complaint that was ultimately filed had previously been proposed by prior counsel, submitted to the court, so the court had a copy? As I recall, it had been submitted by counsel. As a proposed to be filed in the future? That's my understanding. And that wasn't changed. It's an attorney-drafted document. Okay, we have no further questions. Thank you very much. Mr. Craig, so the way it works is you've got a minute. If there's anything that you heard the other lawyer say that you think would be useful to respond to, you have a minute to do so. Yes, that is absolutely false. When I said that, I was talking about it requires that Mr. Husam-Edin get the whole board approval to remove me. She is misleading you with that. Furthermore, Mr. Mendez, who had the case, filed an 11B. Both of them filed an 11B saying they needed more time, that I failed to give them 21 days to correct that deficiency. So she knows that's not true. And secondly, when he's saying about the amended complaint, that went straight to jurisdiction. They bribed my attorney. If you look at the paperwork I gave you, they paid him $35,000 prior to me hiring him. That's why Mr. Charney is not here. Let me ask you just a quick question for clarification, Mr. Craig. Did the second amended complaint you filed, was that one that your previous attorney, regardless of this issue you just pointed out, had prepared and suggested to the court or proposed to the court as an exhibit, if you know? The second amended complaint that I put in, I'm not sure if it was three or two. But the second amended complaint, I went to court. Judge Crowe directed me to remove them as defendants, Mr. Charney and Mr. Steyer, right? She told me to go over it, and it was me. I filed the complaint. That's why I didn't understand why she didn't grant it. But also, when you look at, they approved the complaint with all of the allegations I made against the lawyer, Mr. Charney. They approved it. I mean, and they referred contempt charges, because that was so vital to my case that the jurisdiction. It was my lawyer, Fred Litchfielder. I am not a- Mr. Craig, we have your argument. We've been here for a little longer, but that's okay. But we do understand your arguments. We appreciate your coming in today, and counsel as well. As all the other cases today, we take it under advisement, which means at some future date, after the judges, we go, we talk about this case, we read everything. There will be in the future- Thank you for letting me be heard. I really appreciate it. After 2019- And we are delighted you came in. Thank you very-